IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
(SYRACUSE DIVISION)

```
                                                    x
-------------------------------------------------
In re                                               :
                                                    :
RPM HOLDINGS, LLC,                                  :   Case No. 10-31550-5-MCR
                                                    :   Chapter 11 Case
                        Debtor.                     :
-------------------------------------------------
```

## DECLARATION OF MARVIN G. MARSHALL
## PURSUANT TO LOCAL BANKRUPTCY RULE 2015-6

I, Marvin G. Marshall declare, pursuant to section 1746 of title 28 of the United States Code, that:

1. I am the President of RPM Holdings, LLC ("Holdings"), a Delaware limited liability company, and the Manager of RPM Ecosystems Ithaca, LLC ("Ithaca"), a New York limited liability company. Holdings and Ithaca are each a debtor and debtor in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"). In my capacity of President of Holdings and Manager of Ithaca, I am familiar with the Debtors' day-to-day operations, businesses, and financial affairs.

2. I submit this declaration ("Declaration") pursuant to Local Bankruptcy Rule 2015-6 to assist the Court and other parties in interest in understanding the circumstances that compelled the commencement of these chapter 11 cases and in support of (i) the Debtors' petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") filed on the date hereof (the "Petition Date") and (ii) the relief, in the form of motions and applications, that the Debtors have requested of this Court (collectively, the "First Day Pleadings").

3. Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my review of relevant documents, or my opinion based upon experience, knowledge, and

information concerning the Debtors' operations and financial affairs. If called upon to testify, I would testify competently to the facts set forth in this Declaration. I am authorized to submit this Declaration on behalf of the Debtors.

4. This Declaration is intended to provide a summary overview of the Debtors and these chapter 11 cases. Sections I through III of this Declaration provide an overview of the Debtors' businesses and organizational structure, and the circumstances giving rise to the commencement of these chapter 11 cases. Section IV summarizes the relief requested in each of the First Day Pleadings. Section V lists the schedules of information required by Local Bankruptcy Rule 2015-6 and additional schedules attached for the benefit of the Court.

## I.
## The Debtors' Businesses and Organizational Structure

5. Holdings is a Delaware limited liability company. Ithaca is a New York limited liability company. Holdings owns 100% of the issued and outstanding membership interests in Ithaca. Holdings is owned by the Marshall and Lovelace families. A chart showing the individual members of the families and each of their respective ownership percentage is attached hereto as Exhibit A.

6. Holdings has no operations or employees. Ithaca employs up to 30 employees, largely dependant upon the time of year.

7. Holdings was formed in April 2006 to develop and operate a nursery business using the patented Root Production Method ® (RPM) for growing trees, plants, shrubs, and grasses. Holdings is the master license holder of this process.

8. Holdings currently has three operational subsidiaries:

- RPM Ecosystems Southeast LLC, a South Carolina nursery which began operation in September 2008 with full production to begin January, 2010;

- RPM Ecosystems Gulf Coast LLC created to support a large continuing United States Department of Agriculture (USDA) project for replanting trees destroyed by recent hurricanes as well as a three year project entitled "Replant South Mississippi"

- RPM Ecosystems Ithaca LLC launched in 2006 as a nursery operation for growing RPM trees, shrubs and grasses. This nursery is currently operational with a full complement of in-process inventory.

9. The Root Production Method (RPM) is an all-natural, non-GMO innovative method of growing trees and shrubs that results in significantly faster growth, earlier maturity and greater survival rates – particularly under difficult planting conditions. A patented methodology, RPM has successfully been applied to over 250 species of trees, shrubs and grasses.

10. Results have been independently researched by the U. S. Forestry Service and major universities over the last 23 years in a variety of plant environments and proven to be superior when compared with plants grown using traditional growing methods. The University of Missouri Center for Agro forestry and University of Missouri Department of Forestry, the U.S. Army Corps of Engineers, the U.S. Environmental Protection Agency, the U.S. Forest Service, Queen's University and Green Mount College of Agriculture in the United Kingdom, and the U.S. Department of Agriculture have documented the exceptional survivorship, rapid growth, and regeneration capabilities of RPM plants.

11. Trees can be grown to varying degrees of maturity and priced accordingly. RPM has two general product categories targeting mass market segments:

- The 210-day old RPM tree. At about 7 months of age, RPM trees can be planted in the ground and will maintain RPM growth benefits through to maturity with no additional proprietary inputs required. The 210-day old tree compares in size with a 2- to 3-year old non-RPM container tree and will maintain accelerated growth through to maturity;

- Mature RPM trees. Mature RPM are 3-5 years of age but equivalent in size to a 9-15year old non-RPM tree. Key market segments such as land developers, urban landscaping and retail nurseries purchase large numbers of trees of this size. Given RPM's rate of growth advantage, we can produce these trees faster and at substantially lower costs.

12. RPM is a leading supplier to U.S. Department of Agriculture, U.S. Army Corps of Engineer, U.S Fish and Wildlife Service, U.S. Department of Energy, U.S. Forest Service, State Departments of Transportation, State Departments of Natural Resources and Conservation, environmental consulting firms, engineering firms, not-for-profits and conservation groups across North America.

**The Facility**

13. Ithaca owns a 106 acre fully developed production facility which includes 50,000 square feet of greenhouse space. The facility is located at 2150 Dryden Road, Dryden, New York.

**Financial Information**

14. The Debtors owe obligations to secured and unsecured creditors as set forth below:

**Secured Loan Facility**

Claims secured by all assets of the Debtors are:

| | |
|---|---|
| Chemung Canal Trust Company Operating Loan | $2,009,900.35 |
| Chemung Canal Trust Company Mortgage | $2,724,055.06 |
| Chemung Canal Trust Company Loan | $1,246,005.08 |
| Tompkins County, New York | $ 464,501.58 |
| Tompkins County, New York | $ 150,041.58 |
| TOTAL | $6,594,503.65 |

**Unsecured Debt**

Unsecured claims are estimated as follows:

| | |
|---|---|
| RPM Holdings, LLC | $ 328,714.81 (unsecured) |
| RPM Ecosystems Ithaca, LLC | $ 434,261.44 (unsecured) |
| RPM Ecosystems Ithaca, LLC | $ 515,120.00 (unsecured-disputed) |

## II.

### Financing

15. Capitalization of the Debtors' business was obtained through a combination of loans from Chemung Canal Trust Company and Tompkins County, together with a contribution of funds and land by Marvin and P.J. Marshall. The Lovelace family was required to contribute the RPM technology patent to RPM

Technologies, LLC ("Technologies") which then issued an exclusive, irrevocable and royalty free technology license to Ithaca.

16. Chemung Canal Trust Company is owed approximately $6,000,000 and is secured by a lien on essentially all of the Debtors' assets. Tomkins County is owed approximately $615,000 and holds a subordinate lien on the Debtors' personal property to secure repayment of its claim.

17. The Debtors and Chemung Canal Trust Company have discussed and tentatively agreed to a stipulation providing the Debtors with authority to use cash collateral, subject to Court approval.

**Unsecured Debt**

18. In addition to the foregoing, as of the Commencement Date, Holdings and Ithaca had undisputed unsecured debt of approximately $1.1 million and $950,000, respectively.

## III.
### Events Leading to the Chapter 11 Case

19. Despite the viability of the Debtors' business in the long term, the Debtors have insufficient funds to satisfy their current financial obligations and the obligations owed to Chemung Canal Trust Company have matured. In addition, the Debtors require additional funding to properly capitalize the companies to be able to fully realize on the available opportunities.

20. In order to restructure the existing obligations of the companies and to finalize the financing required for the future growth of the Debtors, it was determined that the protections and remedies available in an Chapter 11 case afforded the companies the highest likelihood of success.

## IV.
### Summary of First Day Pleadings

21. The Debtors intend to seek relief from the Court as soon as possible after the Commencement Date through each of the motions by the Debtors as described below:

| TITLE | PURPOSE OF MOTION |
|---|---|
| Motion for Order Directing Joint Administration of Chapter 11 Cases Pursuant | Joint administration of the chapter 11 cases of |

| TITLE | PURPOSE OF MOTION |
|---|---|
| to Rule 1015(B) of the Federal Rules of Bankruptcy Procedure | Holdings and Ithaca. is requested. |
| Motion of Debtors Pursuant to Sections 361 and 363 of the Bankruptcy Code For Entry of Interim Order (I) Authorizing the Debtors to use Cash Collateral, (II) Determining Adequate protection Pending Final Hearing, and (III) Scheduling Final Hearing (the "Cash Collateral Motion") | Interim order authorizing Debtors to use cash collateral to fund limited, ordinary course business expenses. |
| Motion Pursuant to Sections 105(a), 345(b), 363(c) and 364(a) of the Bankruptcy Code for Authorization to (I) Continue Using Existing Cash Management System, and (II) Maintain Existing Bank Accounts and Business Forms | Authorization to use existing bank accounts and cash management systems is requested |
| Motion of Ithaca Pursuant to Sections 105(a) and 363(b) of the Bankruptcy Code for an Order Authorizing Payment of Wages, Compensation and Employee Benefits | An order authorizing Ithaca to pay prepetition wage claims and continue existing employee benefit programs is requested |

## V.
### Information Required by Local Bankruptcy Rule 2015-6

22. Local Bankruptcy Rule 2015-6 requires certain information related to the Debtors, which is set forth below and in the attached schedules.

23. In accordance with Local Bankruptcy Rule 2015-6(a)(2), the Debtors advise that they have filed their complete schedules contemporaneously with the commencement of the case, and that such schedules includes a summary of the Debtors' assets and liabilities.

24. In accordance with Local Bankruptcy Rule 2015-6(a)(3), the Debtors advise that they are in possession of all of their property, and that with the exception of security deposits for a landlord, no property is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

25. In accordance with Local Bankruptcy Rule 2015-6(a)(4), the Debtors advise that they have filed their complete schedules contemporaneously with the commencement of the case, and that Schedules A and G describe the locations in which they conduct business.

26. In accordance with Local Bankruptcy Rule 2015-6(a)(5), the Debtors advise that they have filed their complete statements of financial affairs, and that the Debtors substantial assets are located at their business location in Dryden, New York, that they are in possession of their own books and records, and that no assets are located outside the territorial limits of the United States.

27. In accordance with Local Bankruptcy Rule 2015-6(b)(1), the estimated amount of the weekly payroll to employees of Ithaca (exclusive of officers, directors, consultants and stockholders) is $15,500 (the wages are paid bi-weekly, however).

28. In accordance with Local Bankruptcy Rule 2015-6(b)(2), the amounts to be paid for services for the 30 day period following the filing of the chapter 11 petition to the members of the Debtors is approximately $13,000 (approximately $6,500 per month is supposed to be paid to each of two (2) members. The salary to the members has been accrued and not paid since the beginning of 2010).

29. In accordance with Local Bankruptcy Rule 2015-6(b)(3), Schedule 1 hereto contains the estimated cash receipts and disbursements and net cash gain or loss for the 1 year period following the commencement of the Debtors' chapter 11 cases.

30. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Accordingly, I respectfully request that the Court grant all of the relief requested in the First Day Pleadings and such other and further relief as may be just.

Dated: June 8, 2010

By: /s/ Marvin G. Marshall
Marvin G. Marshall